730 A.2d 479

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Philip A. VALENTINO, Respondent.**

Supreme Court of Pennsylvania.

Argued Feb. 2, 1999.

Decided May 20, 1999.

610

Raymond Wierciszewski, Philadelphia, for Disciplinary Board.

James C. Schwartzman, Philadelphia, for Philip Valentino, Jr.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

This disciplinary matter arises from a Petition for Discipline charging Respondent, Philip Valentino, Jr., with a violation of Pa.R.D.E. 203(b)(1), based upon his conviction of one count of mail fraud,18 U.S.C. § 1341. The Disciplinary Board has recommended that Respondent be disbarred. Upon independent review of the circumstances surrounding Respondent's conviction, we hold that the appropriate sanction for his misconduct is a five-year suspension, retroactive to the date of temporary suspension.

The record establishes that between 1987 and 1996, Respondent and Dr. Larry Moses engaged in several instances of

fraud against insurance companies. Dr. Moses submitted fraudulent medical bills overstating the amount of medical services that had been provided to patients.[1] Respondent then mailed the files and reports to the insurance companies, which issued settlement checks to Respondent. One of the five cases of fraudulent billing involved the personal injury action of Respondent's mother. Another case, which formed the basis of Respondent's conviction, involved an action by his wife where she recovered a settlement check in the amount of $3,000.

At his mother's arbitration hearing, Respondent submitted the false medical bills of Dr. Moses, who was under investigation for his billing practices at the time. In 1996, Respondent's mother was subpoenaed to testify before the grand jury about her visits to Dr. Moses. Respondent acted as her attorney and advised her to give false testimony regarding her treatment, which she did. Realizing the seriousness of the situation, Respondent immediately contacted his attorney and had the improper testimony corrected. To protect his mother from a perjury prosecution, Respondent admitted his involvement in the scheme. Although the government was only aware of the false billing involving Respondent's wife and mother, Respondent volunteered information regarding three other cases on which the statute of limitations had run.

In November of 1996, Respondent entered a guilty plea to one count of mail fraud. He subsequently joined in a Petition to Suspend filed by the Office of Disciplinary Counsel, which our Court granted on February 24, 1997. On February 28, 1997, Judge Robert Kelly of the United States District Court for the Eastern District of Pennsylvania granted Respondent's motion for a downward departure from the sentencing guidelines and sentenced Respondent to three years probation, with the first twelve months on home confinement. Respondent was further ordered to pay restitution in the amount of $21,800, and pay a fine of $5,000.[2]

1. The cases did involve actual injuries where medical treatment was sought.

2. Judge Kelly noted at sentencing that Respondent's mail fraud conviction did not fall within the norm as reflected in the sentencing guide-

A disciplinary hearing was held on October 14, 1997. The Hearing Committee found that Respondent's conviction constituted a conviction of a serious crime and was a *per se* ground for discipline under Pa.R.D.E. 203(b)(1).[3] It also found that Respondent violated Rule of Professional Conduct 3.4(b), (a lawyer shall not counsel or assist a witness to testify falsely), and Rule of Professional Conduct 8.4(b), (it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects). The Committee noted that Respondent's conviction for mail fraud and his subornation of perjury was mitigated by the fact that he brought his misconduct to the attention of the authorities, paid full and complete restitution and presented strong evidence of his good character. Accordingly, it recommended a twenty-four month suspension, retroactive to the date of temporary suspension.

In a Report and Recommendation dated August 28, 1998, the Disciplinary Board concurred with the Hearing Committee's conclusions regarding Respondent's violation of disciplinary rules. As to the appropriate discipline, however, it recommended disbarment. The Board found that Respondent's mail fraud conviction was considerably aggravated by his subornation of perjury and that his dishonesty rose to the level of misconduct exhibited in *Office of Disciplinary Counsel v. Grigsby*, 493 Pa. 194, 425 A.2d 730 (1981) and *Office of Disciplinary Counsel v. Holston*, 533 Pa. 78, 619 A.2d 1054 (1993), where disbarment was found to be the appropriate sanction.[4] Respondent filed a Petition for Review with this Court, and we granted oral argument.

In attorney disciplinary matters, our review is *de novo*. Pa.R.D.E. 208(e). Thus, we are not bound by the

lines and that his subornation of perjury was a panic reaction which was corrected.

3. Rule of Disciplinary Enforcement 203 provides that a conviction of a crime which may result in suspension under Enforcement Rule 214 (relating to attorneys convicted of crimes) shall be grounds for discipline.

4. One Board member dissented and would have recommended a four-year suspension.

findings or recommendations of the Disciplinary Board, although we give them substantial deference. *Office of Disciplinary Counsel v. Chung,* 548 Pa. 108, 695 A.2d 405 (1997). Exercising such review, we concur with the Disciplinary Board's factual findings and conclusions concerning the violations of disciplinary rules. The only matter remaining for our consideration is the appropriate discipline to be imposed.

In any disciplinary case arising from a criminal conviction, the events surrounding the criminal charge must be taken into account when determining an appropriate measure of discipline. *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 441 A.2d 1193 (1982). Consideration is to be given to any mitigating factors that are present. *Id.* Moreover, we recognize that the sentence imposed by the federal court has already provided Respondent with punishment for his misconduct. Disciplinary sanctions, in contrast, are not designed for their punitive effects, but rather are intended to protect the public from unfit attorneys and maintain the integrity of the legal system. *Office of Disciplinary Counsel v. Christie,* 536 Pa. 394, 639 A.2d 782 (1994).

The Office of Disciplinary Counsel urges our Court to adopt the Disciplinary Board's recommendation of disbarment. Respondent contends that the extensive mitigating evidence presented warrants a suspension of no more than three years. In determining whether to impose suspension or disbarment, we keep in mind the essential difference between the two sanctions.

> [T]he distinction between these two sanctions is more than a quantitative one. There is a qualitative difference between [suspension and disbarment]. Although reinstatement is provided for in the case of suspension (exceeding three months) and disbarment, Pa.R.D.E. 218, the entitlement to reinstatement under the two sanctions is materially different. In the case of suspension the withdrawal of the privilege to practice law is for a specified period of time. After the expiration of that period a suspended attorney can resume the practice of law upon a demonstration of his or her fitness to practice. In contrast, where disbarment has

been imposed, the length of the withdrawal of the privilege to practice law has not been previously determined. In disbarment the only expression as to the length of the withdrawal of the license to practice is that it must extend for a period of at least five years.

*Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 578–579, 506 A.2d 872, 874–875 (1986); See also *Matter of Renfroe,* 548 Pa. 101, 695 A.2d 401 (1997).

Respondent argues that suspension is warranted based on the fact that he has no prior history of disciplinary violations, he cooperated with the authorities by making full disclosure of the wrongful conduct and promptly paid his restitution and fine. Regarding the subornation of his mother's false testimony before the grand jury, Respondent contends that he acted out of panic, immediately recognized his error and rectified the matter. He cites extensively from Judge Kelly's remarks at his sentencing hearing and refers us to a decision of the New Jersey Disciplinary Board which imposed a two year suspension from the practice of law in that state.

The Office of Disciplinary Counsel relies on *Office of Disciplinary Counsel v. Grigsby,* and *Office of Disciplinary Counsel v. Holston,* in support of disbarment.[5] In *Grigsby,* the respondent filed a false sworn application for a driver's license and filed a sworn pleading known to be false in connection with a garnishment proceeding. Considering the respondent's extensive disciplinary record, we concluded that disbarment was necessary to protect the public, the profession and the courts from a lawyer who had repeatedly engaged in professional misconduct. We held that false swearing is an "egregious species of dishonesty" which goes to the heart of the legal profession. *Id.* at 200, 425 A.2d at 733. We stated:

5. Office of Disciplinary Counsel further contends that Judge Kelly's remarks at sentencing are irrelevant to the determination of the appropriate discipline as the focus of the criminal trial was Respondent's loss of liberty, whereas the focus of a disciplinary proceeding is his fitness to practice law. It also urges our Court to disregard the decision of the New Jersey Disciplinary Board and instead rely on the recommendation of its own Board, disbarment.

The purpose of the Code of Professional Responsibility and the Rules of Disciplinary Enforcement is to protect the public, the profession and the courts. Whenever an attorney is dishonest, that purpose is served by disbarment. *Id.* at 201, 425 A.2d at 733.

In *Holston*, the respondent forged a judge's name on a fabricated divorce decree and lied to a judicial authority when questioned on the matter. In determining that the respondent's infractions warranted the most severe sanction, we noted that the attorney's dishonest acts demonstrated a callous disregard for the integrity of the judicial process. We cited our decision in *Grigsby* and reaffirmed the proposition that false swearing in a judicial proceeding is an egregious species of dishonesty that is patently prejudicial to the administration of justice.

■ We find that Respondent's disciplinary infractions do not rise to the level of misconduct as demonstrated in *Grigsby* and *Holston*.[6] Notwithstanding the fact that his errant behavior was grounded in dishonesty, our Court has declined to adopt a *per se* rule requiring disbarment for specific acts of misconduct. *Office of Disciplinary Counsel v. Chung*, 548 Pa. 108, 695 A.2d 405 (1997). We further decline Respondent's invitation to impose a three-year suspension. His participation in a scheme to defraud insurance companies constitutes a serious breach of trust and the subornation of false testimony of his mother before a grand jury is nothing short of contemptible. We hold that the appropriate sanction to protect the public and maintain the integrity of the legal system is a five-year suspension.

We reach this conclusion based on the fact that Respondent retained the moral sense to immediately perceive his serious wrongdoing and bring his malfeasance to the attention of the

6. In his dissenting opinion, Mr. Justice Nigro discerns no appreciable difference between Respondent's misconduct and the misconduct that warranted disbarment in *Holston*. The two cases differ, however, as the Respondent in *Holston* lied to the judge when initially questioned about the origins of the fabricated document. In the instant case, Respondent immediately recognized his misconduct and reported the same to the authorities.

court. He not only cooperated with the authorities, but also volunteered information regarding additional impropriety. This in no way excuses Respondent's serious disciplinary violations but it demonstrates that he recognizes the grievous nature of his conduct and accepts responsibility for his actions. Moreover, we note that Respondent has no prior disciplinary history and presented substantial evidence of good character.[7]

Accordingly, we impose a five-year suspension retroactive to February 24, 1997, the date Respondent was placed on temporary suspension. It is further ordered that he shall comply with the provisions of Pa.R.D.E. 217 and that he shall pay costs, if any, to the Disciplinary Board pursuant to Pa.R.D.E. 208(g).

Justice NIGRO files a Dissenting Opinion in which Justices CASTILLE and SAYLOR joins.

NIGRO, Justice, dissenting.

The Majority concludes that the appropriate discipline to be imposed upon Respondent is a five-year suspension retroactive to February 24, 1997, the date that he was placed on temporary suspension by order of this Court. I respectfully disagree. Given the seriousness of Respondent's misconduct, I believe the appropriate discipline to be imposed is disbarment.

Contrary to the Majority's conclusion, I believe that Respondent's conviction of the serious crime of mail fraud, which is a *per se* ground for discipline under Pennsylvania Rule of Disciplinary Enforcement 203(b)(1), as well as his violations of Pennsylvania Rules of Professional Conduct 3.4(b)[1] and

---

7. The character witnesses appearing on Respondent's behalf included religious leaders, prominent attorneys, court reporters, clients, friends and neighbors. Their praise was extensive. The Hearing Committee found this testimony impressive and relied on it in recommending a twenty-four month suspension. Although the Disciplinary Board discounted the character testimony, finding that the witnesses had no perception of the extent of Respondent's criminal actions, we find it relevant. Our Court has held that we may be enlightened by the decisions of the triers of fact who had the opportunity to observe the demeanor of witnesses during their testimony. *Office of Disciplinary Counsel v. Jackson*, 536 Pa. 26, 637 A.2d 615 (1994).

1. Rule 3.4(b) of the Pennsylvania Rules of Professional Conduct states that a lawyer shall not falsify evidence, counsel or assist a witness to testify falsely.

8.4(b)[2], do indeed rise to the level of misconduct demonstrated in *Office of Disciplinary Counsel v. Holston,* 533 Pa. 78, 619 A.2d 1054 (1993). In *Holston,* the respondent forged a judge's name on a fabricated divorce decree in an attempt to cover up his failure to competently represent his client in the divorce. When questioned about the divorce decree, the respondent lied to the judge, telling him that he did not know how he got the document. However, shortly thereafter, the respondent consulted with an attorney, realized the gravity of his misconduct, and informed the judge that he was responsible for forging his signature on the divorce decree. In mitigation, the respondent argued that he was under extreme personal and financial pressures, that once he realized his error he admitted his misconduct to the judge, that he had fully admitted his wrongdoings, and that he was active in his church and community. Given the egregious nature of Holston's misconduct, however, the Court found that the only appropriate form of discipline that would protect both the integrity of the bar and the administration of justice was disbarment. In reaching this conclusion, the Court stated that:

> Respondent acted dishonestly and has demonstrated his unfitness to continue practicing law. Truth is the cornerstone of the judicial system and a license to practice law requires allegiance and fidelity to truth. Respondent's lying to the court and dishonesty in forging a court order are the antithesis of these requirements. Accordingly, we deem disbarment to be the appropriate remedy in this case....

*Holston,* 533 Pa. at 84, 619 A.2d at 1057.

I do not discern any appreciable difference between Respondent's misconduct and the misconduct that resulted in Holston's disbarment. If anything, I believe that Respondent's misconduct may be more egregious than the misconduct that resulted in Holston's disbarment, because Respondent committed his misconduct over an extended period of time,

---

**2.** Rule 8.4(b) of the Pennsylvania Rules of Professional Conduct states that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

and because Respondent directed his own mother, as her attorney, to perjure herself and open herself to potential criminal liability. Although Respondent decided to correct his mother's perjurious testimony soon after her appearance before the grand jury, and thereafter cooperated fully with the authorities' investigation into his collusion with Dr. Moses, Respondent has nevertheless dealt a serious blow to both the standing and integrity of the bar and the administration of justice. Therefore, I cannot concur in the Majority's conclusion that a five-year suspension is appropriate in the instant case. Instead, in accordance with the Report and Recommendation of the Disciplinary Board issued on August 28, 1998, I would disbar Respondent retroactive to the date of his temporary suspension on February 24, 1995.

Justices CASTILLE and SAYLOR join in the dissenting opinion.