766 A.2d 335

**In the Matter of Dennis J. IULO.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 2000.

Decided Feb. 20, 2001.

Anthony P. Sodroski, Philadelphia, for Office of Disciplinary Counsel.

Samuel C. Stretton, West Chester, for Dennis J. Iulo.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CAPPY, Justice.

This matter is before the court as a disciplinary enforcement proceeding. The specific context is a rule to show cause why respondent, Dennis J. Iulo, should not be subject to reciprocal discipline due to his disbarment in New Jersey. Although we reject respondent's argument that the Office of Disciplinary Counsel (hereinafter "ODC") is precluded from seeking reciprocal discipline in this case, for the reasons set forth more fully below, we discharge the rule.

In 1972 respondent was admitted to practice law in New Jersey. An audit of respondent's trust account revealed a shortfall of trust monies in June of 1981. Upon disclosure of the shortfall to the Disciplinary Review Board of New Jersey respondent was temporarily suspended from the practice of law in 1982. A criminal investigation of the trust shortfall led to respondent's conviction on two counts of knowing misapplication of clients' funds. N.J.S.A. 2C:21–15. In response to the conviction, the Supreme Court of New Jersey permanently disbarred respondent in 1989. *Matter of Iulo*, 115 N.J. 498, 559 A.2d 1349 (1989).

In 1990 respondent applied for permission to sit for the Pennsylvania Bar examination. The application was withdrawn prior to its consideration by the Pennsylvania Board of

Law Examiners, (hereinafter "PBLE"). Respondent again applied to the PBLE for permission to sit for the exam in 1992. After a formal hearing on the application, respondent was denied permission to sit for the exam. In 1995 respondent renewed his request for permission to sit for the bar examination. A hearing before a member of the PBLE was held on October 3, 1996 to review respondent's application. After review by the entire Board, the Executive Director of the PBLE notified respondent that his application to sit for the examination had been approved under Pa.B.A.R. 203(a)(3). The subsection of the bar admission rule at issue provides as follows:

(2) absence of prior conduct by the applicant which in the opinion of the Board indicates character and general qualifications (other than scholastic) incompatible with the standards expected to be observed by members of the bar of the Commonwealth.

Pa.B.A.R. 203(b)(2).[1]

Subsequent to receiving approval of his application to sit, respondent passed the February 1999 bar examination. Respondent was admitted to the bar of Pennsylvania on July 8, 1999. On December 28, 1999, this court issued a rule to show cause why respondent should not be subject to reciprocal disbarment. Respondent filed an answer to the rule and requested oral argument before this court.

■ Argument having been heard, the matter is now ripe for disposition. As in all matters relating to attorney discipline, this court's review is de novo. *Office of Disciplinary Counsel v. Christie*, 536 Pa. 394, 639 A.2d 782, 783 (1994); Pa.R.D.E. 208(d), (e)(5).

Respondent raises several objections to the imposition of reciprocal discipline. The initial objection is that the principles of res judicata and collateral estoppel bar ODC's current action given the full exploration of respondent's New Jersey

---

1. This subsection of the rule has since been renumbered as 203(b)(2); for the sake of clarity it will be referenced by its current designation throughout this opinion.

disbarment before the PBLE. Respondent asserts that once he was found to satisfy the character requirements of Pa. B.A.R. 203(b)(2), further action predicated on the New Jersey disbarment was precluded in Pennsylvania.

There must be a concurrence of four conditions in order for respondent to prevail on his res judicata claim. The doctrine of res judicata applies when there exists an identity of issues, an identity of causes of action, identity of persons and parties to the action, and identity of the quality or capacity of the parties suing or being sued. *Safeguard Mutual Insurance Company v. Williams,* 463 Pa. 567, 345 A.2d 664, 668 (1975). Similarly, a collateral estoppel claim will succeed only with the concurrence of four conditions. Collateral estoppel applies when the issue decided in the prior adjudication was identical with the one presented in the later action, there was a final judgment on the merits, the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in the prior adjudication. *Id.* Neither res judicata nor collateral estoppel will apply in the absence of an identity of issues. *Id.*

Respondent finds an identity of issues by focusing on the question of his character as determined by the PBLE in ruling upon his application to sit for the Pennsylvania bar examination. PBLE was fully apprised of respondent's transgressions and the measure of discipline imposed in New Jersey. Respondent asserts any further punitory action predicated on the New Jersey conduct was barred, once this information was fully explored by the PBLE and a determination made, that as of 1995 respondent met the character qualifications necessary to sit for the bar examination.

ODC rebuts this assertion, finding a distinction between fitness to sit for the bar exam, and the necessity of imposing reciprocal discipline as the result of an outstanding order of disbarment in another jurisdiction. ODC submits that the issue in a case involving reciprocal discipline is whether a

disciplinary adjudication in another jurisdiction requires the imposition of the same or similar discipline. It posits that this issue encompasses more than the limited question of the character of the individual attorney. (In fact, ODC conceded at oral argument that PBLE had correctly resolved the character issue.) A determination of reciprocal discipline focuses on the legitimate goals of the disciplinary systems in the original discipline state and the reciprocal state. The issue is whether disciplinary action is necessary in the reciprocal state to further the policy objectives of protecting the public from attorneys of questionable fitness, ensuring the integrity of the judicial system and deterrence of similar conduct by other similarly licensed attorneys in both jurisdictions.

On this point we must agree with ODC. There is no identity of issue between the decision of the PBLE to grant permission to sit for the bar examination and an action of ODC to request imposition of reciprocal discipline. A current determination that respondent possesses the requisite character to apply for admission to the bar of Pennsylvania may be relevant to a determination of whether or not in this case reciprocal discipline is appropriate, but is not preclusive to the question itself. Accordingly, we find no merit to respondent's claim that once his character was found sufficient to meet the general requirement of Pa.B.A.R. 203(b)(2), ODC was collaterally estopped or barred by res judicata from presenting a petition for reciprocal discipline.

Respondent also argues reciprocal discipline is barred in this case by laches. Laches is an equitable doctrine which precludes a party from pursuing a complaint when it is guilty of a lack of diligence in asserting its rights, such that the passage of time has caused prejudice to the opposing party. *Stilp v. Hafer*, 553 Pa. 128, 718 A.2d 290 (1998). Respondent was disbarred in New Jersey in 1989. Pennsylvania was aware of that order of disbarment when respondent sought permission to sit for the bar exam in 1992. By waiting until 1999 to pursue reciprocal discipline, respondent claims he has suffered prejudice. Respondent has been admitted to the bar

of Pennsylvania and taken on the obligations and encumbrances of a legal practice in this jurisdiction. To disbar respondent now after allowing him to undertake the efforts of opening a practice in Pennsylvania, he avers, would be unjust.

This argument fails for a very simple proposition. Until respondent became an attorney licensed in Pennsylvania he could not be subject to reciprocal discipline. There was no failure of due diligence in pursuing this matter by ODC.

Having found reciprocal discipline is not barred we turn to the merits of whether or not reciprocal discipline should be imposed in this case. We begin with Pa.R.D.E. 216:

RULE 216. RECIPROCAL DISCIPLINE

(a) Upon receipt of a certified copy of an order demonstrating that an attorney admitted to practice in this Commonwealth has been disciplined by suspension or disbarment in another jurisdiction, the Supreme Court shall forthwith issue a notice directed to the respondent-attorney containing:

(1) a copy of said order from the other jurisdiction; and

(2) an order directing that the respondent-attorney inform the Court within 30 days from service of the notice, of any claim by the respondent-attorney that the imposition of the identical or comparable discipline in the Commonwealth would be unwarranted, and the reasons therefor.

The Board shall cause this notice to be served upon the respondent-attorney by mailing it to he address furnished by the respondent-attorney in the last registration statement filed by such person in accordance with Enforcement Rule 219(d) (relating to periodic assessment of attorneys).

(b) In the event the discipline imposed in the other jurisdiction has been stayed there, any reciprocal discipline imposed in the Commonwealth shall be deferred until such stay expires.

(c) Upon the expiration of 30 days from service of the notice issued pursuant to the provision of subdivision (a) of this rule, the Supreme Court may impose the identical or comparable discipline unless Disciplinary Counsel or the

respondent-attorney demonstrates, or the Court finds that upon the face of the record upon which the discipline is predicated it clearly appears:

(1) that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

(2) there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that the court could not consistently with its duty accept as final the conclusion on that subject;

(3) that the imposition of the same or comparable discipline would result in grave injustice; or

(4) that the misconduct established has been held to warrant substantially different discipline in this Commonwealth.

Where the Court determines that any of said elements exist, the court shall enter such other order as it deems appropriate.

(d) In all other respects, a final adjudication in another jurisdiction that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this Commonwealth.

(e) An attorney who has been disciplined by suspension or disbarment in another jurisdiction, shall report the fact of such suspension or disbarment to the Secretary of the Board within 20 days after the date of the order imposing discipline.

Amended March 11, 1983, effective April 2, 1983; July 18, 1995, effective Aug. 5, 1995.

The essence of respondent's opposition to reciprocal disbarment is that, in this case, imposition of the same or comparable discipline would result in a grave injustice. Pa. R.D.E. 216(c)(3). The issue in a reciprocal discipline action is whether the order of the originating state requires the imposition of discipline in the reciprocal state. Pennsylvania is not mandated to automatically impose identical disciplinary measures; in fact there remains within this court the discretion to

impose greater, lesser or no reciprocal discipline. As stated previously, this issue is resolved by examining the legitimate goals of the originating and reciprocal states' disciplinary systems, protection of the public, integrity of the judicial system and deterrence.

Disbarment in New Jersey holds no practical opportunity for reinstatement. As the New Jersey Supreme Court noted, in the past one hundred years there have been only three orders of reinstatement following disbarment. *In Re Wilson*, 81 N.J. 451, 409 A.2d 1153, 1157 n. 5 (1979). Pennsylvania, on the other hand, contemplates reinstatement as a corollary to disbarment. Pa.R.D.E. 218. *In Re Verlin*, 557 Pa. 47, 731 A.2d 600 (1999); *In the Matter of Costigan*, 541 Pa. 459, 664 A.2d 518 (1995); *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986). This distinction in approach reveals that New Jersey conducts disciplinary matters with more emphasis on the punitive aspects, while Pennsylvania concerns itself with punishment as a prerequisite to rehabilitation.

With that distinction as a starting point, we examine the misconduct that prompted disbarment in New Jersey. In that situation, as reported by the New Jersey Supreme Court, respondent was proven an inept bookkeeper rather than a self-interested thief. As the court noted: "there is no smoking gun to be found in the proofs. There is no purchase of a Cadillac with client's funds." *Iulo*, 559 A.2d at 1350. However, New Jersey law allows for no exception where an attorney suffers a criminal conviction; he must be permanently disbarred. *Id.* at 1352.

In Pennsylvania, although a criminal conviction does establish an automatic basis for discipline, the extent of that disciplinary measure is dependent on the nature of the violation and the mitigating facets of each case. *Office of Disciplinary Counsel v. Zdrok*, 538 Pa. 41, 645 A.2d 830 (1994). Our review of this matter necessitates examining other aspects of respondent's life.

 Respondent is currently 53 years of age. He completed his undergraduate studies at Fairley Dickinson University in 1968 and received his juris doctor from Loyola University School of Law in 1971. After his admission to the New Jersey Bar, he worked as a solo practitioner, undertaking all the tasks of running his office, including typing, filing and bookkeeping. During his years in practice, respondent engaged in significant pro bono work, particularly on behalf of the homeless population in New Jersey. Subsequent to his temporary suspension, respondent operated a business, Prestige Typing and Office Services. By typing for other attorneys respondent was able to support himself and his family through the years. After relocating to Pennsylvania, respondent continued working in community related programs. Through his church he participated in religious education for children and provided assistance to senior citizens.

Respondent acknowledges his culpability for the misuse of entrusted funds. He realizes that using the funds of one client to pay the expenses of another client during a period of cash flow shortage was an error in judgment. He asserts, and we agree, that this error does not reveal a basic flaw in character, but rather a lack of maturity and fiscal responsibility. Over the years since his suspension from the practice of law, respondent has proven that he gained the wisdom and experience to learn from his misstep and overcome the shortcomings that caused it. Respondent's rehabilitation in this regard is what prompted the PBLE to permit respondent to sit for the bar exam. Given the passage of time from the initial violation in 1981 and 1982, until the court's present consideration of respondent's status, we find no evidence that respondent would pose a threat to the public by engaging in the practice of law at this time.

These same considerations reveal an individual who has learned a serious lesson about the necessity of preserving the integrity of the judicial system through his conduct as an officer of the court. Nothing in this record leads us to believe that respondent's resumption of the practice of law at this juncture in his life will tarnish the integrity of the courts of

this Commonwealth. *See Office of Disciplinary Counsel v. Surrick,* 561 Pa. 167, 749 A.2d 441, 449 (2000).

 Finally, we note that deterrence is a considerable factor in matters of reciprocal discipline. Pennsylvania will not tolerate a reputation for welcoming disbarred attorneys from other jurisdictions to practice law with impunity in our courtrooms. Although we have always favored a system of professional discipline that weighs each individual case on its merits, we acknowledge that sometimes a brightline rule must be drawn. The need to deter other similarly situated attorneys from swarming to our courts is cause to create such a brightline rule. To that end the Pa.R.B.A. 203 has been amended as follows:

> (3) Presentation of a certificate of good standing from the highest court or the agency having jurisdiction over admission to the bar and the practice of law in every state or jurisdiction in which the applicant has been admitted to practice law, stating that the applicant is in good professional standing at the bar of such court or state. An applicant who is disbarred or suspended for disciplinary reasons from the practice of law in another jurisdiction at the time of filing an application for permission to sit for the bar exam shall not be eligible to sit for the bar exam.

Amended November 23, 1999, effective immediately.

In conclusion, we find that no bar to reciprocal discipline was erected upon the decision of the PBLE to permit respondent to sit for the Pennsylvania Bar examination. Only after respondent was admitted to practice law in this Commonwealth could he be the subject of a rule to show cause why reciprocal discipline should not be imposed. Having now reviewed the entire record and giving due deference to the decision of the New Jersey Supreme Court, we find that the imposition of reciprocal discipline in this instance would be a grave injustice. Accordingly, the rule is discharged.[2]

---

**2.** Given our disposition of this matter we do not address respondent's remaining claims of fundamental fairness and due process.

Justice ZAPPALA files a concurring opinion in which Justice SAYLOR joins.

Justice NIGRO files a concurring opinion.

ZAPPALA, Justice, concurring.

I agree with the majority that the rule to show cause should be discharged, as the imposition of reciprocal discipline in this particular case would amount to a grave injustice as set forth in Pa.R.D.E. 216(c)(3). I write separately, however, to disassociate myself from that portion of the majority's analysis that reevaluates the facts underlying Respondent's misconduct in New Jersey. It is not the role of our Court to look behind a foreign jurisdiction's finding of attorney misconduct and second-guess the method and manner of discipline imposed.[1] Such an evaluation is precisely what our Court intended to prevent in disbarment cases by adopting Pennsylvania Rule of Bar Admission 203, which effectively precludes an attorney who is disbarred in another jurisdiction from seeking admission to practice law in this Commonwealth. As the majority properly notes, however, this rule is not applicable to the instant case as it had not yet been adopted at the time Respondent sought to gain admittance to the Pennsylvania bar.

The majority's rehashing of the factual predicate of Respondent's transgressions demonstrates the infirmity in such an approach. The majority not only looks behind the New Jersey Supreme Court's disciplinary ruling, but also behind the criminal conviction which formed the basis of the disciplinary proceeding. In finding that Respondent's misconduct "does not reveal a basic flaw in character, but rather a lack of maturity and fiscal responsibility," Op. at 215, the majority overlooks the fact that an element of the offense for which Respondent was convicted is the unlawful disposition of prop-

1. Other than a finding of grave injustice, the only other instances where reciprocal discipline may *not* be imposed arise when it is clear from the record that the procedure was so deficient as to constitute a deprivation of due process, where there was an infirmity of proof and where the misconduct has been held to warrant substantially different discipline in this Commonwealth. Pa.R.D.E. 216(c).

erty.[2] Implicit in such finding is something far more serious than immaturity. Although our Court is by no means bound by the New Jersey rulings when imposing a disciplinary sanction in Pennsylvania, I find it unwise to discount them. The grave injustice that would occur upon imposition of reciprocal discipline does not arise from Respondent being wrongly convicted or disbarred in New Jersey, but rather would lie in the fact that Respondent was given every assurance that he would be permitted to practice law in Pennsylvania upon passage of the bar exam.

Although I agree that there is no evidence that Respondent would pose a threat to the public by engaging in the practice of law at this time, the same may be said of future respondents who have been disbarred in foreign jurisdictions and will not be permitted to seek admittance in Pennsylvania under the newly adopted bar admission rule. Thus, this case should be seen for what it is—a limited exception to what our Court has done in the past and a practice that will not be repeated in the future.[3]

Justice SAYLOR joins this Concurring Opinion.

NIGRO, Justice, concurring.

I agree with the majority that reciprocal discipline in the instant case would be a grave injustice. I write separately, however, because I do not believe that Pa.R.B.A. 203 should have been amended to create a bright line rule that prohibits attorneys who have been disbarred or suspended for disciplinary reasons in other states from applying to sit for the Pennsylvania bar exam. Historically, this Court has taken the position that the events surrounding each particular case of

---

**2.** The New Jersey statute provides that "a person commits a crime if he applies or disposes of property that has been entrusted to him as a fiduciary ... in a manner which he knows is unlawful and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted whether or not the actor has derived a pecuniary benefit." N.J.S.A. 2C:21–15.

**3.** I recognize that this case may apply to a limited number of similarly situated respondents who sought admittance prior to the adoption of Pa.R.B.A. 203.

attorney misconduct must be taken into account when determining the appropriate discipline. *See Office of Disciplinary Counsel v. Valentino,* 556 Pa. 609, 730 A.2d 479, 481 (1999). The amendment of Pa.R.B.A. 203 ignores this long-standing dictate in disciplinary proceedings. Furthermore, two of our neighboring states, New Jersey and Ohio, offer no opportunity for anyone who has ever been disbarred to petition for reinstatement. Consequently, decisions to disbar attorneys in those states will permanently preclude those attorneys from applying to sit for the Pennsylvania bar, or from petitioning for reinstatement to the Pennsylvania bar, regardless of the circumstances surrounding their misconduct. For these reasons, Pa.R.B.A. 203 should not, in my view, have been amended.