Office of Disciplinary Counsel v. Susi

Disciplinary Board Docket no. 53 D.B. 2002.

SAIDIS, *Member,* July 30, 2003—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On February 28, 2002, the Supreme Court of Pennsylvania entered a rule to show cause directing that, as respondent, Dan W. Susi, had been convicted in the Court of Common Pleas of Erie County of the crimes of indecent assault and selling or furnishing liquor or malt or brewed beverages to minors, and that he show cause why he should not be placed on temporary suspension. On April 19, 2002, upon consideration of the response to the rule filed by respondent, the Supreme Court entered an order discharging the rule and directing that the matter be referred to the Disciplinary Board pursuant to Rule 214(f)(1), Pa.R.D.E.

On May 13, 2002, petitioner, Office of Disciplinary Counsel, filed a petition for discipline against respondent. Respondent filed an answer to petition for discipline on May 30, 2002.

A disciplinary hearing was held on October 22, 2002, before Hearing Committee 4.16 comprised of Chair Ernest R. Walker, Esquire, and Members John D. Goetz, Esquire, and Jean A. Manifesto, Esquire. Philip B. Friedman, Esquire, represented respondent.

Following briefing by the parties, the Hearing Committee filed a report on February 24, 2003, and the majority recommended that respondent be suspended for at least one year and one day. Member Manifesto filed a dissenting opinion and recommended that respondent be publicly censured.

Respondent filed a brief on exceptions on March 12, 2003. Petitioner filed a brief opposing exceptions on March 31, 2003.

This matter was adjudicated by the Disciplinary Board at the meeting of May 14, 2003.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent was born in 1958 and was admitted to practice law in the Commonwealth in 1984. His office address is 714 Sassafras Street, Erie, PA 16501.

(3) By criminal information filed on July 19, 2000, in the Court of Common Pleas of Erie County, respondent was charged with indecent sexual contact with Justin, an 18-year-old male. Justin's last name is being withheld to avoid potential embarrassment. The incident occurred on or about April 2, 2000. Respondent was also charged with unlawfully furnishing alcoholic beverages to the victim.

(4) On August 27, 2001, respondent entered a plea of guilty before the Honorable Stephanie Domitrovich to two counts of indecent assault and one count of selling or furnishing liquor or malt or brewed beverages to minors.

(5) On November 15, 2001, Judge Domitrovich imposed the following sentence on respondent:

(a) On the count of selling or furnishing liquor to minors, 90 days to one year imprisonment in the Erie County jail effective November 15, 2001, with work release for the first 30 days and electronic monitoring for 60 days thereafter, a $300 fine, 100 hours of community service, and completion of the sex offenders program.

(b) On the first count of indecent assault, two years probation consecutive, a $300 fine and costs.

(c) On the second count of indecent assault, two years probation concurrent, a $300 fine and costs.

(6) Respondent reported his conviction to the Disciplinary Board as required by Pa.R.D.E. Rule 214(a).

(7) At the time of the incidents at issue, the victim was 18 years old and a senior in high school.

(8) Prior to the incidents, the victim had troubles with the law. In October 1998 and January 1999, he was charged with underage drinking. In July 1999, the victim was charged with burglary and simple assault. The victim's mother retained respondent to represent her son on these charges, because she knew him from previous volunteer work on a local political campaign and because she respected and trusted him. The charges were resolved in September 1999 through probation.

(9) Respondent charged $500 for his services to represent the victim. When the victim's mother offered respondent a check, respondent did not accept it. He suggested that the victim instead work off the fee by performing odd jobs at respondent's properties at the rate of $10 per hour.

(10) Both the victim and his mother agreed to this arrangement, and his mother thought it would be good to teach him a lesson. The victim's mother discussed the victim's prior underage drinking charges with respondent and specifically told him that she did not condone the victim's underage drinking.

(11) The victim began working sporadically at respondent's property. Typically, respondent would call the victim's mother to arrange a specific date for work, and the victim would return home by 2:30 that afternoon or, at the latest, by 5-6 p.m.

(12) On April 2, 2000, respondent picked the victim up at his home. The victim did not return home again until 1:30 a.m. on April 3.

(13) On the evening of April 2, respondent purchased rounds of alcoholic drinks, including beer and shots of liquor, for himself and the victim while they were at the

bar of the Nuova Aurora Club. At the time of these purchases, respondent knew that the victim was 18 years of age and that it was not legal for him to purchase or consume alcohol in Pennsylvania.

(14) After leaving the Nuova Aurora Club, respondent took the victim to Rocco's Tavern where respondent attempted unsuccessfully to have himself and the victim served alcohol. At the tavern, respondent tried to persuade the bartender that he was the victim's uncle, but the victim was denied alcohol.

(15) At approximately 9:50 p.m., the victim's mother called respondent's home to ask about the victim's whereabouts and spoke to respondent's wife. She indicated that she was not aware that the victim was with respondent. Respondent's wife also stated that she had received a message from respondent earlier that evening stating that he was done working and was going to stop to get something to eat.

(16) After leaving Rocco's Tavern, respondent took the victim to respondent's home to get something to eat. While at the home, respondent served the victim a beer and a shot of liquor.

(17) After eating, respondent told the victim to put on his coat and wait in the basement while he cleaned up the kitchen. While he was waiting, the victim passed out while sitting in the basement of respondent's home. The victim awoke to a moist feeling in his ear and respondent performing oral sex on him. The victim stated that he "looked down and Mr. Susi had my genitals in his hands and then his mouth around my penis." (PE 16 at p. 3; N.T. 45.) The victim stated, "I was in shock and began cussing at him." (PE 16 at p. 3.)

(18) As the victim attempted to walk home, respondent convinced him to get into his car. While stopped at a red light, respondent reached over and grabbed the victim's genitals with one hand and/or attempted to put the other hand down the front of the victim's pants. The contact occurred without the victim's consent.[1]

(19) The victim returned home at 1:30 a.m. Respondent accompanied the victim to the front door, where they were met by the victim's mother. The victim's mother smelled alcohol on his breath and berated both the victim and respondent about drinking. The victim told respondent never to call him again and went inside. The victim was highly emotional and upset and confided to his mother shortly afterwards about what had happened. The victim's parents took him shortly afterwards to St. Vincent Health Care Center, where a forensic exam was conducted. The victim also gave a statement to the police while at the hospital.

(20) The victim felt betrayed by the respondent's conduct. Justin was subsequently depressed and had sleeping problems. The criminal conduct, of which Justin was the victim, has been a source of family tension.

(21) Justin did not attend his high school graduation ceremonies because of the incident. The incident also caused Justin to miss a ship out date and failed to honor a previous commitment to the Navy.

(22) Respondent's illegal conduct which gave rise to criminal proceedings became generally known to the public in Erie, Pennsylvania. Respondent became a high-

---

1. While evidence of this second incident was not directly presented at the hearing, a description of the event appears in petitioner's exhibit 10, the transcript from respondent's August 27, 2001 guilty plea hearing.

profile defendant and the incidents generated substantial negative publicity and media attention in the Erie area.

(23) Media coverage of the criminal proceedings occurred during a period of approximately 22 months. Several articles about the proceedings also appeared in the Pittsburgh and Beaver County areas.

(24) The 2001 president of the Erie County Bar Association testified that the incidents involving respondent embarrassed and negatively impacted the legal profession and the Erie County Bar Association. The 2002 president of the Erie County Bar Association testified that the incidents had a "very, very negative" impact on the legal profession.

(25) Respondent has served as an assistant county solicitor and as solicitor for the Erie County Board of Assessment Appeals. He also served as an assistant public defender from 1988 through 1992 and as a solicitor for the Pennsylvania Department of Revenue from 1988 to 1996.

(26) In 1991, respondent ran for the position of district attorney of Erie County. Respondent served on the Pennsylvania Democratic Executive Committee from 1998 through 2002.

(27) Respondent is a member of the Erie County Bar Association, the Pennsylvania Bar Association and the American Bar Association. He is also active in the Erie County LAVA Program which provides pro bono services.

(28) Respondent has not been the subject of prior disciplinary proceedings. Further, at the time of the hearing, respondent had not been charged with other crimes or sued for professional liability by any client.

(29) In January 2001, respondent began treating with Manuel J. Manolios of McMurray-St. Clair Psychotherapy Associates.

(30) The 12 character witnesses who testified live or by letter for respondent were members of the Erie County bar, involved in local government, or citizens of the community. In sum and substance, the witnesses testified that respondent has enjoyed a good reputation for truthfulness and honesty, and that respondent is a hardworking and dedicated attorney.

(31) Two of respondent's witnesses—James Terrill and John Carlson—testified that respondent's misconduct did not damage the reputation of the Erie County legal community. Mario Restifo also testified that the incident did not hurt the bar.

(32) At the hearing, respondent testified he continued to practice law and had complied with all probation requirements imposed upon him. He has completed his community service and drug and alcohol evaluation. (N.T. 164.)

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rule of Disciplinary Enforcement and Rule of Professional Conduct:

(1) Pa.R.D.E. 203(b)(1)—Respondent's conviction for indecent assault and furnishing liquor to a minor constitutes a conviction of a serious crime and is an independent basis for discipline.

(2) R.P.C. 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

## IV. DISCUSSION

This matter is before the Disciplinary Board upon a petition for discipline charging respondent with violations of the Rules of Professional Conduct and Rules of Disciplinary Enforcement based upon his conviction for indecent assault and furnishing liquor to a minor.

The sole issue to be determined is the extent of final discipline to be imposed since the disciplinary proceeding is based upon respondent's conviction of a serious crime. In order to determine the discipline, the events surrounding the criminal charge must be taken into account. *Office of Disciplinary Counsel v. Valentino,* 556 Pa. 609, 730 A.2d 479 (1999). All relevant aggravating and mitigating facts must be considered and evaluated. *Office of Disciplinary Counsel v. Chung,* 548 Pa. 108, 695 A.2d 405 (1997).

In the instant matter, respondent represented Justin, an 18-year-old male, on burglary and simple assault charges in 1999. The victim's mother retained respondent to represent her son on these charges. The charges were resolved in September 1999 through probation. In lieu of payment for services, respondent suggested that the victim work off the fee by performing odd jobs at respondent's properties. On April 2, 2000, after the victim and another adult male worked all day at respondent's property, respondent took the victim to a private club and purchased beer and shots of liquor for him. Respondent took the victim to another bar where he tried, unsuccessfully, to have the bartender serve him more alcohol. Respondent then took the victim to respondent's home, where he served the victim more alcohol and the victim passed out. Respondent initiated oral sex on him,

without his consent, after he had passed out. Respondent initiated further contact with the victim, again without consent, after he convinced the victim to let him drive him home.

At the time of the incidents in question, respondent was well aware that Justin was underage and it was illegal for him to drink alcohol. The respondent was also aware that Justin had been in trouble with the law for underage drinking in October 1998 and January 1999, and that Justin's parents did not approve of him drinking alcohol. Respondent was in a position of authority to the victim, as the victim was working for him to pay off a fee from a prior representation. Respondent was also the victim's former attorney, and had been someone that the victim relied on to help him with his legal problems. Furthermore, respondent was in a position of trust with the victim's parents.

Respondent acted illegally and inappropriately in purchasing and repeatedly serving alcohol to the victim, in initiating oral sex on the victim and in inappropriately touching the victim in the car on the way home. Respondent's misconduct is particularly egregious in light of respondent's relationship to the victim as his former attorney and current employer, and his knowledge of the victim's background. Respondent displayed none of the judgment and maturity that are the hallmarks of a fit attorney. Indeed, respondent seemed to abandon any sense, wisdom and foresight as to his actions and their impact on his professional and personal life.

Respondent's conduct caused Justin great embarrassment. Upon his return to his parent's home that evening, Justin was highly emotional and upset. Shortly after his return, Justin confided to his mother about what hap-

pened. The victim was taken to St. Vincent's Health Care Center for a forensic exam and gave a statement to the police. The victim felt betrayed by the respondent's conduct. Justin was subsequently depressed and had sleeping problems. Justin did not attend his high school graduation ceremonies because of the incident. The incident also caused the victim to miss a ship out date and failed to honor a previous commitment to join the Navy. The criminal conduct, of which Justin was the victim, has been a source of family tension.

Respondent did pay a price for his conduct. His family life is damaged, his financial standing is insecure, and he is now a convicted criminal. Respondent became the subject of intense media scrutiny in the Erie area. Prior to, and even subsequent to, the incidents in question, respondent by all accounts was a hard-working and competent attorney. He expressed remorse for his misconduct at his criminal sentencing and at the disciplinary hearing. He apologized to the victim and to the victim's family. At the time of the hearing, respondent was on probation and had completed his community service and alcohol and drug evaluation. Respondent attended court-ordered counseling for sex offenders with Manuel J. Manolios. At the time of the disciplinary hearing, he intended to continue with that counseling.

Several cases involving sexual misconduct and criminal convictions have been decided by the court. These cases suggest a range of behaviors and possible sanctions. In the matter of *Office of Disciplinary Counsel v. Christie,* 536 Pa. 394, 639 A.2d 782 (1994), the attorney was suspended for five years as a result of his conviction on various misdemeanor sex offenses involving two male minors, ages 12 and 14. Respondent invited the minors

to his apartment, served them alcohol, showed them adult videotapes, and masturbated in their presence. There was no sexual contact of the minors. The Supreme Court noted that while Mr. Christie's actions did not in any way involve clients or the practice of law, that fact did not eliminate the need for discipline. In imposing the suspension, the court took into account that Mr. Christie's criminal conduct was caused by a psychiatric disorder for which he received extensive treatment, he was remorseful and had a low risk of recidivist behavior.

In the matter of *In re Anonymous No. 127 D.B. 94,* no. 64 Disciplinary docket no. 3 (Pa. June 2, 1998), the attorney was convicted of three counts of indecent assault. The attorney asked three different women, either clients or married to clients, to come to his office on separate occasions ostensibly to review legal matters. The attorney then asked the women to stand in front of a wall calendar to look at dates. While the women were doing this, the attorney stood in back of them and engaged in offensive touching and other inappropriate behavior. The Disciplinary Board found that the attorney's actions were extremely serious, as he used his law office to engage in these activities with clients. The board viewed the attorney as using his power as a licensed professional to place the women in the compromising positions, thus abusing the trust of the women. The board recommended a five-year suspension retroactive to the attorney's temporary suspension. The Supreme Court imposed this discipline.

*In re Anonymous No. 77 D.B. 97,* 49 D.&C.4th 119 (2000), involved an attorney who was convicted of one count of indecent assault after he kissed and fondled an adult female client and made sexually explicit statements to her. The Supreme Court imposed a three-year retroac-

tive suspension, which was recommended to it by the board. The board opined that the attorney's conduct was particularly offensive as it occurred in his law office, where the victim came for legal advice.

In a recent decision, *In re Anonymous No. 35 D.B. 2001,* no. 652 Disciplinary docket no. 3 (Pa. July 25, 2002), the attorney was convicted of corrupting the morals of a minor. The attorney went to his 16-year-old intern's home to give her a ride to work. The intern invited the attorney into her living room and initiated physical contact by kissing him and touching his genital area. Respondent reciprocated. The police were called after the intern's brother interrupted them. The board noted the high price paid by the attorney for his criminal conduct, but further stated that his acts reflected adversely on his fitness to continue practicing law. The board recommended a suspension of 20 months, which the Supreme Court imposed.

The Hearing Committee in the instant matter recommended a suspension of at least one year and one day. The committee reasoned that this length of suspension, which requires that respondent petition for reinstatement, would allow respondent to get the full benefit of counseling and get his personal and financial affairs in order. The committee noted that respondent had already paid a high price for his conduct and was the target of extensive negative publicity. The dissenting member of the committee recommended a public censure, a lesser sanction, specifically drawing attention to the media coverage and the resultant embarrassment experienced by respondent. Member Manifesto opined that no evidence was presented that respondent was unfit to practice law, that the Erie County legal community was permanently

damaged, or that there was a risk to the public of repeat behavior.

After considering all of the facts of record and the case law, the board recommends that respondent be suspended for a period of three years. Respondent's actions are similar to the misconduct perpetrated by the attorneys in the above-cited cases. His actions are more serious than those of the attorney in the most recent matter, who engaged in kissing and touching with his teenage intern after she initiated the contact. That attorney received a 20-month suspension. Certainly it can be said that respondent's actions are more repugnant and require a stricter sanction, as he provided liquor to a minor and performed oral sex on that individual without consent, then attempted to grope the victim a second time. A one year and one day suspension is inadequate under the circumstances to address respondent's criminal behavior and does not appear to be in line with prior case law. While the board is cognizant that each case must be decided on an individual basis, *Office of Disciplinary Counsel v. Lucarini*, 504 Pa. 271, 472 A.2d 186 (1983), no special mitigating circumstances exist to justify a shorter suspension than the range suggested by the case law. The extensive media attention, respondent's embarrassment and his personal distress, are not the focus of this proceeding, but rather the crimes respondent engaged in.

The board recommends that respondent be suspended for a period of three years.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Dan W. Susi, be suspended for a period of three years.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Watkins dissented and would recommend a two-year suspension.

Board Member Wright recused himself.

Board Member Sheerer did not participate in the May 14, 2003 adjudication.

## ORDER

And now, October 9, 2003, upon consideration of the report and recommendations of the Disciplinary Board dated July 30, 2003, the motion to impose retroactive discipline and response thereto, the motion to impose retroactive discipline is granted, and it is hereby ordered that Dan W. Susi be and he is suspended from the bar of this Commonwealth for a period of five years, retroactive to July 9, 2003, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Nigro dissents and would adopt the Disciplinary Board's recommendation to suspend respondent for a period of three years.