## Office of Disciplinary Counsel v. Panarella

Disciplinary Board Docket no. 98 D.B. 2001.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

GEPHART, *Member,* February 4, 2004—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

By order of the Supreme Court of Pennsylvania dated July 10, 2001, Nicholas Panarella Jr., respondent, was placed on temporary suspension as a result of his con-

viction of one count of the offense of accessory after the fact to a wire fraud scheme to deprive the public of the honest services of an elected official. Petitioner, Office of Disciplinary Counsel, filed a petition for discipline against respondent on October 28, 2002.

A disciplinary hearing was held on March 19, 2003, before Hearing Committee 1.14 comprised of Chair Mary Frances Ryan, Esquire, and Members Brad Steven Rush, Esquire and Martin L. Trichon, Esquire. Richard L. Scheff, Esquire, represented respondent.

Following briefing by the parties, the Hearing Committee filed a report on September 2, 2003, and recommended that respondent be suspended from the practice of law for a period of four years retroactive to the date of the temporary suspension.

Respondent filed a brief on exceptions and a request for oral argument on September 22, 2003. Petitioner filed a brief opposing exceptions on October 14, 2003.

Oral argument was held on November 10, 2003, before a three-member panel of the Disciplinary Board chaired by Member Smith Barton Gephart, Esquire, with Members Marvin J. Rudnitsky, Esquire and Robert C. Saidis, Esquire.

This matter was adjudicated by the Disciplinary Board at the meeting of November 19, 2003.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsyl-

vania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of any attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Rules of Disciplinary Enforcement.

(2) Respondent was born in 1945 and was admitted to practice law in the Commonwealth of Pennsylvania in 1973. His last registered office address for the practice of law is 5 Rockledge Court, Marlton, NJ 08053. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) On October 24, 2000, the United States government filed an indictment against respondent charging him with mail and wire fraud in violation of 18 U.S.C. §§1341 and 1343, and with aiding and abetting the same in violation of 18 U.S.C. §2. Both the mail fraud and the wire fraud counts alleged in general terms that the scheme in question entailed an effort to defraud the Commonwealth of Pennsylvania and its citizens of their right to State Senator F. Joseph Loeper's honest services in violation of 18 U.S.C. §1346.

(4) On October 25, 2000, respondent entered a plea of not guilty to the charges contained in the indictment.

(5) On November 8, 2000, respondent filed a motion to dismiss the indictment for failing to state a federal crime. On November 3, 2000, the District Court for the Eastern District of Pennsylvania entered an order denying the motion but stating that the government must show that (1) "the scheme involved or contemplated the depri-

vation of Loeper's honest services to the public," (2) respondent "intended to influence or otherwise improperly affect Loeper's performance of his duties," and (3) respondent "intended to deceive the public about his payments."

(6) In December 2000, the federal government filed a one-count superseding information in the United States District Court for the Eastern District of Pennsylvania charging respondent with one count of accessory after the fact to a wire fraud scheme to deprive the public of the honest services of an elected official in violation of 18 U.S.C. §3.

(7) On December 8, 2000, respondent executed a guilty plea agreement.

(8) On December 15, 2000, respondent pleaded guilty to the count charged in the superseding information.

(9) On March 13, 2001, the honorable Marvin Katz sentenced respondent to a six-month term of imprisonment, a one-year term of supervised release, a $20,000 fine, and a $100 special assessment.

(10) Respondent has since completed his term of imprisonment, paid the $20,000 fine in full and has completed his term of supervised release.

(11) By order dated July 10, 2001, the Supreme Court of Pennsylvania temporarily suspended respondent from the practice of law.

(12) The underlying facts and circumstances surrounding the conviction are as follows:

(a) Respondent was a specialist in tax law who provided tax collection services through his law firm, The

Law Offices of Nicholas Panarella, located in Philadelphia.

(b) Respondent also operated a tax collection business known as Municipal Tax Bureau or Municipal Tax Collection Bureau (MTB). Respondent collected various taxes authorized by Pennsylvania law to be imposed on local governments.

(c) In July 1993, F. Joseph Loeper Jr., a Pennsylvania state senator, entered into a written agreement with respondent and MTB pursuant to which Senator Loeper would receive a monthly consulting fee in exchange for consulting services rendered on behalf of MTB.

(d) Respondent sought Senator Loeper's help to expand his business to other Pennsylvania municipalities and other state governments.

(e) Beginning in July 1993, under the terms of the written agreement, respondent paid Senator Loeper approximately $5,000 per month in consulting fees. These payments were made by check.

(f) Between 1993 and 1997, respondent directly or indirectly made payments to Senator Loeper pursuant to the agreement.

(g) In 1994, respondent requested his sub-contractor, J.G. Carpino Associates, make the payments to Loeper. In 1995, he requested that his business associate, Seymour Rubin, make the payments.

(h) Respondent's company issued Senator Loeper an accurate Internal Revenue Service Form 1099 for Loeper's 1993 consulting income.

(i) Senator Loeper was required to identify respondent's company as an outside source of income on his

state ethics financial disclosure form. Senator Loeper did not accurately disclose MTB as the source of his consulting fees on the 1993 ethics form. Instead, he falsely disclosed that he received fees from J.G. Carpino Associates, a company who provided investigative services to MTB and other entities.

(j) Respondent knew that Senator Loeper was required by state and federal law to disclose his financial and business relationships with respondent, and knew that Senator Loeper had filed a false financial disclosure form with the Pennsylvania Ethics Commission.

(k) Senator Loeper was the subject of an inquiry by the *Philadelphia Inquirer* concerning the source of the consulting fees. Senator Loeper devised a false cover story to hide his involvement with MTB.

(l) Respondent assisted in concealing Loeper's involvement by going along with the false cover story. He met with Seymour Rubin to discuss a draft of Rubin's reply to a reporter's question. Respondent helped to edit Rubin's draft letter.

(m) On December 7, 1998, respondent became aware that the federal government was investigating Senator Loeper, himself and others.

(13) The Hearing Committee found that respondent did not demonstrate sincere remorse, as does this board.

(14) Respondent has no prior history of discipline.

(15) Respondent served in the United States Army Special Forces in Central America and Vietnam from 1967 to 1970. He earned a Combat Infantry Badge for leadership and bravery in battle.

(16) Numerous character letters were submitted on respondent's behalf attesting to his good reputation in the community.

## III. CONCLUSIONS OF LAW

By his actions as set forth above, respondent violated the following Rule of Disciplinary Enforcement:

(1) Respondent's conviction constitutes a "serious crime" as defined by Rule 214(i), Pa.R.D.E., and forms the basis for discipline, pursuant to Rule 203(b)(1).

## IV. DISCUSSION

This matter comes before the Disciplinary Board on a petition for discipline charging respondent with violation of Rule 203(b)(1) of the Pennsylvania Rules of Disciplinary Enforcement, arising out of his conviction of one count of accessory after the fact to a wire fraud scheme to deprive the public of the honest services of an elected official. As with all disciplinary matters predicated on a criminal conviction, the proceeding is not an opportunity to retry the underlying facts of the crime, but to determine the extent of discipline to be imposed on respondent. *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 441 A.2d 1193 (1982). Consideration is to be given to any aggravating or mitigating circumstances. *Office of Disciplinary Counsel v. Valentino,* 556 Pa. 609, 730 A.2d 479 (1999).

The Hearing Committee recommended a suspension of four years. The committee reviewed pertinent case law and found that in cases of wire fraud or mail fraud, the court handed down lengthy suspensions. In making

its final recommendation, the committee relied heavily on its finding that respondent did not express sincere remorse for his criminal actions. The committee further found that respondent was evasive in his answers to numerous questions and did not admit his guilt. The committee considered respondent's exemplary military service, letters of good character and his lack of prior discipline. Nevertheless, the committee found that respondent's criminal action and demeanor clearly outweighed the mitigating factors.

Respondent took exception to some of the committee's findings and conclusions and to its recommendation. Respondent contends that the committee took improper consideration of newspaper articles; the committee misunderstood the circumstances of the criminal conviction; the committee did not properly credit respondent's show of remorse; and the committee did not consider some additional findings of fact submitted by respondent as mitigating factors. Oral argument was held before a three-member panel of the board.

After review of the record and the report of the oral argument panel, the board finds that respondent's exceptions are without merit. The committee did not place improper weight on the newspaper articles to the extent that its recommendation of discipline was more severe due to the content of the articles. The committee did consider respondent's mitigating factors and addressed them in the discussion portion of the report, specifically noting his exemplary military career. The committee recognized the mitigating factors but determined that respondent's actions and demeanor outweighed such fac-

tors to the extent that they did not weigh heavily in the committee's final analysis of discipline.

Respondent took exception to certain findings of fact made by the committee, arguing that the committee misunderstood the circumstances of the crime. The committee correctly recognized its duty to examine the surrounding circumstances of the criminal conviction and to weigh them accordingly. The committee based its findings on respondent's testimony, the joint stipulations, and exhibits.

The committee accurately assessed respondent's demeanor. At different points in his testimony he stated, "I don't believe that I committed a crime." (N.T. 94.) When asked by the Hearing Committee what, if anything, did respondent do wrong, he stated, "That's a fair question. I think that I was a friend and made an error in judgment." (N.T. 108.) When asked again what he did wrong, respondent stated, "I was a friend, and I made an error in judgment." (N.T. 110.) He continued, "I guess I should have been more vigorous to my standard. I probably should have been more vigorous in getting him to amend his return, okay?" (N.T. 111.) Based on this evidence, the Hearing Committee was justified in finding that he did not display any genuine remorse. The Hearing Committee was also disturbed by respondent's evasive answers to some questions, including to petitioner's question concerning respondent's address. Respondent did not wish to offer that information until directed by the committee to respond.

The only issue to be resolved is the appropriate sanction to address respondent's misconduct. There is no per se rule of discipline and each sanction is unique to the

circumstances of the individual attorney. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). Nevertheless, the board may be guided by the outcomes of disciplinary cases involving similar criminal convictions.

In the matter of *Office of Disciplinary Counsel v. Weiner,* no. 2 D.B. 1999 (Pa. Feb. 29, 2003), Attorney Weiner was convicted of two counts of wire fraud. In addition, he committed perjury when testifying in his criminal trial. The board found that Mr. Weiner's false testimony was an aggravating factor and recommended that he be suspended for a period of four years. The court suspended Mr. Weiner for a period of five years, retroactive to the date of his temporary suspension.

In the matter of *In re Anonymous No. 21 D.B. 1996,* 174 disciplinary docket no. 3 (Pa. May 6, 1997), an attorney was convicted of one count of mail fraud for submitting false insurance claims. He received a suspension of three years retroactive to the date of his temporary suspension.

Respondent's misconduct in the instant matter is serious. He deserves a lengthy suspension, based on the precedent established in similar cases. Respondent's lack of remorse and seeming inability to comprehend the gravity of his wrongdoing aggravates the underlying facts of the matter, as does his evasiveness in answering petitioner's questions. After balancing the facts of the criminal conduct with these aggravating circumstances, the board recommends that respondent be suspended for a period of four years, retroactive to the date of his temporary suspension on July 10, 2001.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Nicholas Panarella Jr., be suspended from the practice of law for a period of four years retroactive to July 10, 2001.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Sheerer, Wright, Peck and O'Connor dissented and would recommend a five-year retroactive suspension.

Board Member Newman dissented and would recommend a four-year prospective suspension.

Board Member Brown recused in this matter.

### ORDER

And now, May 11, 2004, upon consideration of the report and recommendations of the Disciplinary Board dated February 4, 2004, it is hereby ordered that Nicholas Panarella Jr. be and he is suspended from the bar of this Commonwealth for a period of four years, retroactive to July 10, 2001, and he shall comply with all the provisions of Rule 217 Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Madam Justice Newman and Mr. Justice Baer dissent and would impose a five-year suspension retroactive to July 10, 2001.