## Office of Disciplinary Counsel v. Turner

Disciplinary Board Docket no. 136 D.B. 2008.

BUCHHOLZ, *Member,* September 28, 2009—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On September 4, 2008, Office of Disciplinary Counsel filed a petition for discipline against Thomas J. Turner III. The petition charged respondent with violations of the Rules of Professional Conduct and Rules of Disciplinary Enforcement based on allegations that respondent engaged in the unauthorized practice of law. Respondent did not file an answer to petition for discipline.

A disciplinary hearing was held on January 8, 2009, before a District I Hearing Committee comprised of Chair Stephen A. Feldman, Esquire, and Members Michael L. Korniczky, Esquire and Tamara Lee Traynor, Esquire. Respondent appeared pro se.

Following the submission of a brief by petitioner, the Hearing Committee filed a report on May 1, 2009, con-

cluding that respondent violated the Rules of Professional Conduct and Rules of Disciplinary Enforcement as contained in the petition for discipline, and recommending that he be disbarred from the practice of law.

This matter was adjudicated by the Disciplinary Board at the meeting on July 18, 2009.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent is Thomas J. Turner III. He was born in 1943 and was admitted to practice law in the Commonwealth in 1975.

(3) By order of the Supreme Court of Pennsylvania dated October 26, 1993, respondent was suspended from the practice of law for a period of two years.

(4) Respondent never petitioned for reinstatement before the Supreme Court and remains under suspension.

(5) Prior to the two-year suspension, respondent received three informal admonitions in 1978, one informal admonition in 1985, and a private reprimand in 1992.

(6) Respondent is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

*Tammy Coleman Matter*

(7) In November or December 2004, Tammy Coleman received in the mail a solicitation from respondent.

(8) Respondent identified himself as an attorney and offered to assist Ms. Coleman in filing for bankruptcy so that she could retain her house, which was scheduled for sheriff's sale.

(9) Ms. Coleman contacted respondent using the telephone number that appeared on the solicitation.

(10) Respondent represented to Ms. Coleman that he was an attorney and directed her to bring his fee in cash and certain paperwork to a restaurant in Philadelphia.

(11) On December 6, 2004, Ms. Coleman met with respondent at the restaurant.

(12) Ms. Coleman paid respondent $300 in cash and gave respondent paperwork.

(13) Respondent reviewed the paperwork and completed some documents, including a Chapter 13 Bankruptcy petition; summary of schedules and schedules A-J; declaration; statement of financial affairs; disclosure of compensation of bankruptcy petition preparer; and Chapter 13 plan.

(14) Respondent decided where and what specific information should be entered on the documents he prepared on behalf of Ms. Coleman.

(15) Respondent decided which exemptions Ms. Coleman should claim.

(16) Respondent failed to sign and print his name and address on the declaration, the statement and the plan.

(17) Respondent failed to place his social security number on the declaration, the statement and the plan.

(18) These failures violated 11 U.S.C. §110(b)(1).

(19) During respondent's meeting with Ms. Coleman, he told her that the filing of the bankruptcy documents would stop the sheriff's sale of her home and that he would contact her.

(20) After receiving no communication from respondent, Ms. Coleman made several unsuccessful attempts to contact respondent by telephone.

(21) The bankruptcy documents completed by respondent were filed in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

(22) By order dated July 22, 2005, Bankruptcy Judge Kevin Carey found that respondent had engaged in the unauthorized practice of law and had violated numerous provisions of 11 U.S.C. §110.

(23) The court fined respondent $2,000, directed respondent within 15 days of the date of the order to pay to Ms. Coleman the $300 fee he received, and ordered respondent to cease engaging in further fraudulent, unfair or deceptive conduct and the unauthorized practice of law.

(24) Respondent did not pay either the $2,000 fine to the clerk of court or the $300 to Ms. Coleman.

(25) In April 2005, John H. Croom IV, Esquire, referred Janet Miller to respondent, as she was seeking relief from foreclosure.

(26) Ms. Miller met with respondent, who advised Ms. Miller that she could stop an imminent sheriff's sale of her home by filing for bankruptcy, and that he would take care of stopping the sale of her home.

(27) Ms. Miller enlisted respondent's assistance with preparation of the papers necessary to file for bankruptcy.

(28) Ms. Miller presented respondent with copies of her bills and various other papers regarding her financial condition.

(29) Respondent prepared for Ms. Miller a Chapter 13 Bankruptcy petition, declaration, summary of schedules and schedules A-J, statement of financial affairs, Chapter 13 plan, application to pay filing fees in installments, and a disclosure of compensation to bankruptcy petition preparer.

(30) Respondent decided where and what specific information should be entered on each of the documents, and which exemptions Ms. Miller should claim and the amounts thereof.

(31) Respondent signed the petition and the satement as a "non-attorney petition preparer" and printed his name, address and social security number thereon.

(32) Respondent did not sign the declaration, plan or application, nor did he print his name, address and social security number on those documents.

(33) Respondent accepted $300 from Ms. Miller for his services and gave to her for filing the completed bankruptcy documents.

(34) On April 29, 2005, Ms. Miller filed the petition and other documents with the court.

(35) On May 11, 2005, the United States trustee filed a motion for disgorgement of fees and for the imposition of fines and other relief pursuant to 11 U.S.C. §110.

(36) Respondent did not file a response to the motion.

(37) Respondent was served with notice of a hearing scheduled for June 13, 2005.

(38) The hearing was held and respondent appeared and testified.

(39) By order requiring disgorgement of fees paid by debtor and imposing fines and granting additional relief pursuant to 11 U.S.C. §110, dated July 5, 2005, the court made findings and conclusions that respondent engaged in the unauthorized practice of law.

(40) In that same sanctions order, the court disallowed the entire fee of $300 received by respondent from Ms. Miller, directed respondent to disgorge and pay over to Ms. Miller that sum within 15 days of the date of the order, and directed respondent to file a certification with the court.

(41) The court directed fines totaling $3,000 and ordered respondent to cease the unauthorized practice of law.

(42) On September 21, 2007, the trustee filed a motion for contempt against respondent.

(43) On November 21, 2007, respondent filed an answer to the contempt motion.

(44) The court held a hearing on November 29, 2007 and found respondent to be in civil contempt of the sanctions order.

(45) On December 20, 2007, respondent paid the sanctions fee of $3,000 and filed a certification of compliance.

## Unauthorized Practice of Law

(46) In 1998 respondent was working for a company that provided advertising and paralegal services and in that capacity began working at Bongiovanni & Berger, specifically with James J. O'Connell, Esquire. His responsibilities were to mail solicitation letters to prospective clients and perform paralegal duties.

(47) On or before August 6, 2002, Mr. O'Connell reviewed with respondent Pa.R.D.E. 217(j)(1)-(6) and respondent indicated that he would comply with Rule 217.

(48) By letter dated August 6, 2002 to Elaine Bixler, executive director of the Disciplinary Board, Mr. O'Connell advised the Disciplinary Board that he was supervising respondent.

(49) Sometime in 2004, respondent no longer worked for Mr. O'Connell.

(50) From October 2005 through May 2007, respondent worked in the law office of John Croom, located at 1616 Walnut Street, Suite 1908, Philadelphia, PA 19103.

(51) Respondent did not inform the Disciplinary Board that he was working at Mr. Croom's law office nor did he provide the name of his supervising attorney.

(52) Respondent spent unsupervised time in Mr. Croom's office, where he had full access to bankruptcy software and computer programs.

(53) Respondent had direct contact with clients and prospective clients of Mr. Croom in person, by answering telephones, by taking messages and by interviewing clients and prospective clients.

(54) Respondent gave legal advice to some of Mr. Croom's clients.

(55) Respondent provided case information to client-debtors and collected fees from Mr. Croom's clients.

(56) Respondent misrepresented his identity to clients and third parties by intentionally and continuously referring to himself as "Dan McCluskey", among other names.

(57) In March 2007 respondent hired, on behalf of Mr. Croom, an attorney named John Erik Sabo, Esquire. Respondent handled the interviewing and training of Mr. Sabo.

(58) It was not until after he was hired that Mr. Sabo met Mr. Croom, who introduced himself as the attorney for the office.

(59) Mr. Sabo was told that respondent's name was "Dan McCluskey" and he performed paralegal duties.

(60) Mr. Croom was frequently absent from the office from mid-April through the beginning of May 2007.

(61) During these absences, Mr. Sabo observed that respondent routinely:

"(a) conducted client interviews and intake of prospective clients;

"(b) received monies, generally in the form of cash, and documentation from clients and prospective clients;

"(c) answered questions in person or by telephone of clients and others regarding bankruptcy cases;

"(d) offered legal advice to clients and prospective clients;

"(e) prepared and mailed out solicitations to prospective clients;

"(f) declined to answer telephone calls from the trustee's office or the court; and

"(g) failed to identify himself when conducting client interviews and intake and when answering the telephone."

(62) While Mr. Croom was absent from the office, Mr. Sabo out of necessity occasionally consulted with respondent to obtain legal advice and respondent provided the legal advice and guidance on case strategy.

(63) On May 10, 2007 Mr. Sabo left Mr. Croom's employ as he learned, among other things, that Mr. Croom had numerous problems with the court and that respondent was using a false name.

(64) On May 31, 2007, Frederick Baker, Senior Assistant United States Trustee, placed a telephone call to Mr. Croom's office, seeking to find out if respondent was

continuing to operate from Mr. Croom's office using a false name.

(65) Respondent answered the telephone and identified himself as "Dan McCluskey."

(66) During the conversation, Mr. Baker identified himself and inquired twice if "Mr. McCluskey" was actually Tom Turner.

(67) At the disciplinary hearing respondent was unapologetic and unrepentant regarding his conduct while working in Mr. Croom's office, placing the blame solely on Mr. Croom.

(68) Respondent expressed no remorse and defended his conduct, stating that: "looking back, would I do it any different? I don't think so." (N.T. 134.)

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct and Rules of Disciplinary Enforcement:

(1) R.P.C. 5.5(a)—A lawyer shall not practice law in a jurisdiction in violation of the regulations of the legal profession in that jurisdiction, or assist another in doing so.

(2) R.P.C. 5.5(b)—A lawyer who is not admitted to practice in this jurisdiction shall not: (1) except as authorized by the Rules, Pa.B.A.R. 302 or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or (2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

(3) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(4) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

(5) Pa.R.D.E. 203(b)(3)—Willful violation of any other provision of the Enforcement Rules is a grounds for discipline via:

(a) Pa.R.D.E. 217(j)(1)—which prohibits a formerly admitted attorney from engaging in law-related activities in this jurisdiction except under the supervision of a member in good standing of the bar of this Commonwealth;

(b) Pa.R.D.E. 217(j)(2)—which provides that a formerly admitted attorney cannot engage in any law-related activities in this jurisdiction except those of a preparatory nature or those involving clerical assistance to an attorney in good standing appearing as the representative of a client;

(c) Pa.R.D.E. 217(j)(3)—which provides that a formerly admitted attorney may have direct communication with a client or third party only if the communication is limited to ministerial matters, which clearly indicate that he or she is a legal assistant and identify the supervising attorney;

(d) Pa.R.D.E. 217(j)(4)(iv)—which prohibits a formerly admitted attorney from representing himself or herself as a lawyer or person of similar status;

(e) Pa.R.D.E. 217(j)(4)(v)—which prohibits a formerly admitted attorney from having any contact with clients either in person, by telephone, or in writing, except as provided in Pa.R.D.E. 217(j)(3);

(f) Pa.R.D.E. 217(j)(4)(vi)—which prohibits a formerly admitted attorney from rendering legal consultation or advice to a client;

(g) Pa.R.D.E. 217(j)(4)(x)—which prohibits a formerly admitted attorney from receiving, disbursing, or otherwise handling client funds;

(h) Pa.R.D.E. 217(j)(5)—which provides that a formerly admitted attorney must file with the Disciplinary Board a notice of engagement, identifying the supervising attorney and certifying that the formerly admitted attorney's activities will be monitored for compliance.

## IV. DISCUSSION

This matter is before the board on a petition for discipline charging respondent with the unauthorized practice of law during his period of suspension from the bar of the Supreme Court of Pennsylvania. Respondent did not answer the petition and the factual allegations are deemed admitted. Pa.R.D.E. 208(b)(3). Petitioner bears the burden of proving ethical misconduct by a preponderance of the evidence that is clear and satisfactory. *Office of Disciplinary Counsel v. Grigsby*, 493 Pa. 194, 425 A.2d 730 (1981). The evidence, including the factual allegations set forth in the petition, the testimony of six witnesses, and 24 exhibits, proves that respondent violated the Rules of Professional Conduct and Rules of Disciplinary Enforcement contained in the petition for disci-

pline. For the following reasons, the board recommends that respondent be disbarred.

Respondent was suspended by order of the Supreme Court of Pennsylvania dated October 26, 1993. This suspension followed many years of involvement by respondent with the disciplinary system in Pennsylvania, commencing in 1978 with the first of five incidents of private discipline. Respondent never petitioned for reinstatement from his suspension and remains a suspended lawyer.

As a suspended lawyer respondent is prohibited from practicing law. Despite this prohibition, respondent engaged in law-related activities and the unauthorized practice of law; managed the law practice of John Croom, Esquire, and supervised a legal associate in the law office; engaged in misconduct before the Bankruptcy court that necessitated intervention by the court; and violated orders issued by the Bankruptcy court. In particular, the testimony of John Erik Sabo at the disciplinary hearing is revealing as to the breadth and depth of respondent's misconduct. Mr. Sabo is a former associate of the Croom Law Office and personally observed respondent's many acts of misconduct, such as direct communication with clients; soliciting new clients; receiving fees from clients; offering legal advice; misrepresenting his identity to others; and answering Mr. Sabo's legal questions.

Although respondent did not file an answer to petition for discipline, he appeared at the disciplinary hearing and testified on his own behalf. He admitted that he accepted fees from Mr. Croom's clients, dispensed legal advice to clients, and misrepresented his identity so that

a bankruptcy judge would not discover that respondent was working for Mr. Croom. Respondent showed himself to be unrepentant and unapologetic, to the point that he stated he would not change what he had done.

The egregious facts of this case support disbarment. Respondent's suspended status in no way deterred him from practicing law. Any further suspension order would likely have little impact on respondent's future activities. Disbarment is the most severe sanction available to this board, and it is not imposed lightly, as it takes away an attorney's privilege to practice law without guarantee of restoration.

The goals of the attorney discipline system include protecting the public from unfit attorneys, maintaining the integrity of the bar, upholding respect for the legal system, and deterrence. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986); *In re Iulo,* 564 Pa. 205, 766 A.2d 335 (2001). Respondent's disbarment will accomplish these goals.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the respondent, Thomas J. Turner III, be disbarred.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

## ORDER

And now, December 16, 2009, upon consideration of the report and recommendations of the Disciplinary

Board dated September 28, 2009, it is hereby ordered that Thomas J. Turner III is disbarred from the bar of this Commonwealth and he shall comply with all the provisions of Rule 217, Pa. R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa. R.D.E.