**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-2521
_____


JEFFREY E. PERELMAN,
In His Individual Capacity and as Trustee of the Alison R. Perelman Trust;
FRANK KATZ, In His Capacity as Trustee of the Alison R. Perelman Trust;
JEP MANAGEMENT, INC., a Delaware Corporation


v.


RAYMOND G. PERELMAN; RONALD PERELMAN


RAYMOND G. PERELMAN,
                                                Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-09-cv-04792)
District Judge:  Hon. Mary A. McLaughlin


_____

No. 13-2658
_____



RAYMOND G. PERELMAN,
                                                Appellant

v.

ARLIN  ADAMS

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-12-cv-07071)
District Judge:  Hon. Eduardo C. Robreno
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 23, 2013

Before:  CHAGARES, VANASKIE, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: October 25, 2013)
_____

OPINION
_____

CHAGARES, <u>Circuit Judge</u>.

We consider together two related cases filed separately in the United States District Court for the Eastern District of Pennsylvania.  The first — our case number 13-2521 — concerns counterclaims raised by Raymond G. Perelman against his son, Jeffrey Perelman, Marsha Perelman (Jeffrey Perelman's wife), and Frank Katz (collectively, the "counterclaim defendants").[1]  Perelman's counterclaims alleged fraud in the execution of an agreement transferring businesses from Perelman to Jeffrey Perelman, and alleged breach of an express trust for the benefit of Alison Perelman, Perelman's granddaughter. The District Court granted the motion of the counterclaim defendants to dismiss the complaint, holding that the doctrine of res judicata and applicable statutes of limitations barred Perelman's counterclaims.

_____

[1]  Throughout this opinion, we refer to Raymond Perelman by his last name and to his son by his full name, Jeffrey Perelman.

The second case — our case number 13-2658 — concerns the complaint filed by Perelman against his former attorney, Arlin Adams, which alleged fraud and other misconduct related to Adams's representation of Perelman in the transaction with Jeffrey Perelman. The District Court likewise granted Adams's motion to dismiss the complaint on statute of limitations and res judicata grounds. Perelman appeals the decisions of both District Courts. For the reasons that follow, we will affirm both dismissal orders.

I.

A.

We write solely for the parties' benefit and thus recite only the facts essential to our disposition, assuming that the facts alleged by Perelman are true. Perelman owned a number of businesses that he operated with his son, Jeffrey, until the late 1980s. At that time, Jeffrey Perelman wanted to take over as Chief Executive Officer and urged his father to retire. Perelman declined, and Jeffrey Perelman resigned from his father's companies. Perelman later agreed to transfer thirteen subsidiary companies to his son in exchange for a payment of $24 million. Perelman then retained Adams, who was also a friend, and his law firm, Schnader, Harrison, Segal & Lewis ("Schnader"),[2] to execute the transaction. Perelman had several conditions for the transfer: that it have no tax consequences for him; that half of the stock in the companies be transferred to a trust for Perelman's granddaughter Alison for which Adams would act as the Trustee; and that Jeffrey Perelman's wife would renounce any claim to the transferred companies.

---

[2] Adams practiced law at Schnader during all time periods relevant to Perelman's complaint.

The transfer occurred in 1990 through Stock Purchase Agreements prepared by Adams and an associate attorney from Schnader. Those agreements required Jeffrey Perelman to pay approximately $24 million by certified check to his father at the close of the transaction. Perelman was not present at the closing and relied on Adams, who understood his wishes, to represent his interests. At the closing, Adams allowed Jeffrey Perelman to take possession of the companies. However, Perelman alleges, Jeffrey Perelman never paid the required $24 million for the companies and the trust was set up principally for the benefit of Jeffrey Perelman, not for Perelman's granddaughter. Jeffery Perelman is trustee, along with Frank Katz. Jeffrey Perelman transferred the Stock Certificates of the companies to himself, with the permission and aid of Adams. After the closing, Adams drafted a letter to interested banks stating that ownership had properly transferred to Jeffrey Perelman.

In 2007, Perelman expressed his concerns about the transfer to Adams and the Schnader associate who had assisted him. The associate assured Perelman that his wishes regarding the transaction had been carried out. Perelman then requested copies of the transfer documents and was shocked to discover that his granddaughter was not specifically provided for in the trust. In 2010, Perelman received the purchase agreements and other documents related to the sale and learned that Jeffrey Perelman had never paid for the companies. Perelman also recently learned that Adams had served as a paid advisor to Jeffrey Perelman's management company, which he had formed to operate the thirteen companies transferred in the 1990 transaction.

B.

Perelman has also been involved in several state-court actions related to the transactions at issue in the two federal cases currently before us. First, he filed suit against Jeffrey Perelman in October 2009 in the Court of Common Pleas of Philadelphia County alleging fraud, breach of contract, and several related claims. The court dismissed the complaint, and the Superior Court of Pennsylvania affirmed. Second, Perelman filed a malpractice action against Schnader in December 2009 in the Court of Common Pleas of Philadelphia County. The defendant moved for judgment on the pleadings; the court granted the motion and the Superior Court of Pennsylvania affirmed. Finally, Perelman filed a petition in the Court of Common Pleas of Montgomery County, Orphans' Court Division in August 2011 seeking to revoke or revise and reform the trust formed as a result of the 1990 transaction.[3] The petition named several respondents, including Jeffrey Perelman, Marsha Perelman, Frank Katz, and Arlin Adams. The court granted Jeffrey Perelman's and Adams's motions for judgment on the pleadings, holding that the outcome of the Philadelphia County litigation barred Perelman's petition and dismissing the petition with prejudice.

In 2009, Jeffrey Perelman filed a lawsuit against Perelman in the United States District Court for the Eastern District of Pennsylvania, and Perelman filed counterclaims alleging fraud in the execution of the underlying transfer agreement and seeking the imposition of an express trust for the benefit of Alison Perelman. The District Court

---

[3] Perelman also filed a second orphan's court action, which was dismissed for lack of jurisdiction.

dismissed the counterclaims and dismissed the rest of the case as moot. In 2012, Perelman filed a lawsuit against Adams in the District Court for the Southern District of Florida, which was transferred to the Eastern District of Pennsylvania, alleging breach of contract, professional negligence, fraudulent misrepresentation, fraudulent concealment, and fraud related to the 1990 transaction and legal malpractice, breach of contract, and breach of fiduciary duty related to a will Schnader's attorneys prepared for Perelman's wife, Ruth, in 2010.[4] The District Court dismissed the complaint in that lawsuit with prejudice. Perelman timely appealed both dismissal orders.

## II.[5]

We exercise plenary review over a district court's grant of a Rule 12(b)(6) motion to dismiss. Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

---

[4] Perelman's amended complaint alleges irregularities with respect to the preparation of the 2010 will but Perelman does not pursue arguments related to the preparation of the will on appeal.

[5] The District Court had jurisdiction over Perelman's complaint pursuant to 28 U.S.C. § 1332. We exercise jurisdiction over Perelman's appeal pursuant to 28 U.S.C. § 1291.

III.

A.

We first consider the District Court's dismissal of Perelman's counterclaims against Jeffrey Perelman. The District Court held that Perelman's claim of fraud in the execution is barred by the doctrine of res judicata because state-court decisions at the trial and appellate levels either addressed Perelman's claims directly or "arose from the same transaction or series of transactions as the claims resolved" in the state-court actions. Appendix in Perelman v. Perelman ("Perelman App.") 19. Furthermore, the District Court held that the claim concerning imposition of an express trust was barred by applicable statutes of limitations.

We agree that the doctrine of res judicata bars Perelman's counterclaim of fraud in the execution. Following the Supreme Court's decision in Semtek International Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001), this Court held that "[i]n a diversity action, we apply the preclusion rules of the forum state, unless they are incompatible with federal interests." Houbigant, Inc. v. Fed. Ins. Co., 374 F.3d 192, 205 (3d Cir. 2004).[6] Accordingly, as this is a diversity case, and Pennsylvania is the forum state, we apply Pennsylvania's law of preclusion.

Under Pennsylvania law, in order for the doctrine of res judicata to bar a subsequent action, that action and the relevant prior action must share four conditions: "(1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the

---

[6] The parties assume and we agree that Pennsylvania law applies to this action.

7

parties suing or being sued." Unified Sportsmen of Pa. v. Pa. Game Comm'n (PGC), 950 A.2d 1120, 1128 (Pa. Commw. Ct. 2008). In the instant case, as far as Perelman's fraud allegation against Jeffrey Perelman is concerned, Perelman contests the District Court's ruling that this counterclaim is barred by res judicata. Perelman contends that the fraud-in-the-inducement claim decided in the state-court action is distinct from the fraud-in-the-execution allegation we address here, which Perelman raised as a counterclaim in the federal lawsuit filed against him by Jeffrey Perelman and the other counterclaim defendants. That is, Perelman argues that the second element of the res judicata test — identity of causes of action — is not met.

We disagree. Pennsylvania case law provides that "[i]dentity of two causes of action may be determined by considering the similarity in the acts complained of and the demand for recovery as well as the identity of the witnesses, documents and facts alleged." Dempsey v. Cessna Aircraft Co., 653 A.2d 679, 681 (Pa. Super. 1995). Here, certainly, the "witnesses, documents and facts" alleged as part of Perelman's fraud in the inducement claim are identical to those alleged in conjunction with the fraud in the execution claim. Moreover, the "acts complained of" are markedly similar. As the District Court noted, "[Perelman's] pleadings in the First Philadelphia County Action and his counterclaims here rely upon the same central theory: that he and Jeffrey made an Oral Agreement which was not reflected in the separate written agreements, and that this Oral Agreement should be enforced." Perelman App. 17. Indeed, "a number of counterclaims pled by Raymond [Perelman] are identical, or practically identical, to his claims in the First Philadelphia County Action." Id. For example, the complaint filed by

8

Perelman against Jeffrey Perelman in the Court of Common Pleas of Philadelphia County in 2009 alleges the following: "Mr. Perelman entered into an agreement with Jeffrey to transfer the Business Interests . . . conditioned on, inter alia, Jeffrey's transferring fifty percent of the Business Interests to a trust meeting the requirements set forth above for the benefit of his children"; however, "Jeffrey breached that agreement," and "induced his father to transfer the Business Interests to him by representing to Mr. Perelman that he would transfer fifty percent of the Business Interests to a trust meeting the requirements," so that Perelman, "now 92 years old . . . , as a consequence of this fraud, has realized that his plans . . . have been frustrated." Perelman App. 303-04.

The fraud counterclaim of the federal action likewise alleges that "Jeffrey misrepresented to Raymond that he agreed to and would abide by Raymond's requirements" for the transfer of Business Interests. Perelman App. 116. "Jeffrey and Marsha induced Raymond to transfer the Business Interests to Jeffrey by misrepresenting to him that all of Raymond's requirements would be satisfied," so that Perelman, now "92 years old," "as a consequence of his reliance on Marsha's and Jeffrey's misrepresentations, . . . has realized that his plans to ensure that Alison . . . will not have the financial security Raymond wished" have been frustrated and Raymond also is not certain that the Business Interests will "remain in the family." Id. 116-17. The counterclaim for fraud in the inducement contains essentially the same allegations. Id. 117-19.

We therefore hold that, notwithstanding the legal distinction between fraud in the execution and fraud in the inducement — a "subtle distinction," as Perelman himself

9

points out, Perelman Br. 24 — the two causes of action against Jeffrey Perelman meet the identity requirement as defined by Pennsylvania law. For issues that "were part of the same cause of action," like the fraud claims raised here, "[c]laim preclusion applies not only to issues litigated in the first proceeding but also to issues which should have been previously litigated." Malone v. W. Marlborough Twp. Bd. of Supervisors, 603 A.2d 708, 711 (Pa. Commw. Ct. 1992). Given that Perelman's federal counterclaims concern precisely the same alleged misrepresentations about precisely the same transfer of the same business interests, and allege the same harms and seek the same remedies, we hold that Pennsylvania law provides that Perelman's fraud in the execution claim was previously litigated. Accordingly, we agree with the District Court that Perelman's counterclaim of fraud in the execution against Jeffrey Perelman is barred by Pennsylvania preclusion law.[7]

Perelman also challenges the dismissal of his claim to impose an express trust against Jeffrey Perelman and Katz on the basis that that claim was barred by the statute of limitations under Pennsylvania law. Before addressing Perelman's arguments relating to the District Court's statute of limitations analysis, we note that the District Court dismissed the claim for an express trust against Jeffrey Perelman not based on any statute of limitations, but rather on res judicata grounds. We agree with the District Court that,

---

[7] We agree with the District Court that Perelman's fraud in the execution claim against Marsha is time-barred, Perelman App. 27, and that Perelman is collaterally estopped from relying on the discovery rule to toll the statute. Perelman App. 25. Moreover, in this appeal, Perelman makes no specific arguments concerning Marsha apart from those he made against the other counterclaim defendants and thus our analysis concerning the claims against them apply to her as well.

10

for reasons similar to those discussed above, the state court's dismissal of Perelman's express trust claim against Jeffrey Perelman and the subsequent appellate decisions upholding that dismissal bar Perelman from re-litigating an express trust claim against his son in this Court. Accordingly, we will affirm the District Court's dismissal of the express trust claim as to Jeffrey Perelman.

B.

This leaves only the express trust claim against Katz. Both Katz and Jeffrey Perelman are sued in this federal case as co-trustees of an express trust, although Katz was not a named defendant in the Philadelphia County Court of Common Pleas action. The doctrine of res judicata bars not only future suits between the same parties, but also future suits between the same parties and those in privity with them. See In re Iulo, 766 A.2d 335, 337 (Pa. 2001); Thompson v. Karastan Rug Mills, 323 A.2d 341, 345 (Pa. Super. Ct. 1974). If Katz is in privity with Jeffrey Perelman for the purposes of the express trust claim, then, that claim against Katz would be equally barred. "Privity is broadly defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." Montella v. Berkheimer Assocs., 690 A.2d 802, 804 (Pa. Commw. Ct. 1997) (quotation marks omitted). Because the co-trustees of a trust sued in their capacities as trustees would meet this definition, we find that Katz and Jeffrey Perelman were in privity with each other. Accordingly, the express trust claim is precluded against both Katz and Perelman and we will affirm the dismissal of that claim in its entirety.

11

IV.

We turn now to the District Court's dismissal of Perelman's complaint against Adams. Perelman argues that, because he did not discover until 2010 that consideration was not paid, the District Court improperly applied the discovery rule and erroneously concluded that the doctrine of fraudulent concealment did not apply. He contests the District Court's conclusion that a reasonable person who was "shocked and dismayed" by the 2007 discovery would have "requested and reviewed the Agreements with dispatch to ensure that his intended terms, including the $24 million payment, had not been met in a closely related transaction."

Defendants may raise a statute of limitations defense in a 12(b)(6) motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quotation marks omitted). The time bar must be evident on the face of the complaint for the complaint to create a basis for dismissal. Id.; see also Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir.1997). In diversity actions like the present action, federal courts apply the substantive law of the forum state, which includes state statutes of limitations. Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007). In Pennsylvania, a four-year limitations period governs a breach of contract claim, 42 Pa. Cons. Stat. § 5525, and a two-year period governs tort claims of professional negligence, fraudulent misrepresentation, fraudulent concealment, and fraud, 42 Pa. Cons. Stat. § 5524.

Courts will apply the discovery rule to toll the statute of limitations when "the injured party is unable, despite the exercise of due diligence, to know of his injury or its cause." Knopick v. Connelly, 639 F.3d 600, 609 (3d Cir. 2011) (applying Pennsylvania law). A court considering a plaintiff's request to apply the rule "must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause." Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005). Though the reasonable diligence test accounts for the different capacities of different plaintiffs, the test is nonetheless an objective one. Kach v. Hose, 589 F.3d 626, 642 n.17 (3d Cir. 2009). The question of reasonable diligence is ordinarily a matter for the factfinder. Fine, 870 A.2d at 858-59. However, a court may decide the issue when "the facts are so clear that reasonable minds cannot differ [and] the commencement of the limitation period [may] be determined as a matter of law." Knopick, 639 F.3d at 611 (quotation marks omitted); see also Gleason v. Borough of Moosic, 15 A.3d 479, 485 (Pa. 2011).

The doctrine of fraudulent concealment "provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." Fine, 870 A.2d at 860. A plaintiff who seeks equitable tolling based on the doctrine of fraudulent concealment bears "the burden of proving fraudulent concealment by clear, precise, and convincing evidence." Id. Pennsylvania courts apply a standard of "reasonable diligence" — a statute of limitations tolled by fraudulent concealment will begin to run "when the injured party knows or reasonably should know of his injury and its cause." Id. at 861.

13

In support of his assertion that the discovery rule should be applied to toll the limitations period, Perelman contends that he did not learn until 2010 that the required $24 million was not paid during the 1990 transaction. He also emphasizes that none of his lawsuits sought unpaid consideration and argues that he regularly hired attorneys to effectuate business deals and therefore reasonably relied on Adams's counsel. We agree with the District Court that Perelman has not pled sufficient facts to toll the statute of limitations. In light of the amount of money at issue and given Perelman's admission in his complaint that he became so concerned about the transaction in 2007 that he requested the documents relevant to the 1990 transaction, we cannot conclude that a person in Perelman's position, exercising reasonable diligence, would not have discovered the absence of $24 million. Perelman's regular reliance on attorneys to execute business transactions did not deprive him of his capacity to discover that $24 million had not been transferred as required.

Perelman's argument that the doctrine of fraudulent concealment applies to toll the limitations period cannot succeed for similar reasons. He relies heavily on a district court decision in a bankruptcy case. In Schwartz v. Pierucci, the District Court for the Eastern District of Pennsylvania held that when a "fiduciary commits an act of fraud against his principal, the statute of limitations will be tolled, since the very position the fiduciary is in[] prohibits the principal from uncovering the fraud." 60 B.R. 397, 403 (E.D. Pa. 1986). However, we have warned that "the existence of a fiduciary, lawyer-client relationship" will not "alone preclude judgment as a matter of law," though the relationship may suffice, in some circumstances, to "trigger application of the discovery

14

rule." In re Mushroom Transp. Co., Inc., 382 F.3d 325, 342-43 & n.11 (3d Cir. 2004). In other words, though the relationship may be "pertinent to the question of when a plaintiff's duty to investigate arose," the relationship is not dispositive. Id. at 343 (quotation marks omitted). A plaintiff who seeks application of the fraudulent concealment doctrine must still present "clear, precise, and convincing evidence." Fine, 870 A.2d at 860.

In the case against Adams, Perelman has pled no facts that suggest an affirmative act of fraud or concealment by Adams. The amended complaint simply states that Adams understood the conditions of the transaction. As the District Court pointed out, Adams readily turned over "all the transfer documents and the trust agreement," Appendix to Perelman v. Adams 35, when Perelman requested them in 2007. Perelman contends that he only discovered the lack of payment, however, after he received the purchase agreements in 2010. We agree with the District Court that a reasonably diligent person, "shocked and dismayed," id., in 2007 that his wishes with respect to the trust had not been carried out, would not have waited three more years before viewing the purchase agreements. Perelman's complaint does not allege any facts with respect to the three-year lapse between the 2007 meeting and his 2010 discoveries. At the motion to dismiss stage, a plaintiff who seeks to invoke equitable tolling need only "plead the applicability of the doctrine." See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1391 (3d Cir. 1994) (holding that a plaintiff who pled in her complaint that her law firm actively misled her in support of her request for application of the discovery rule had sufficiently pled the application of the doctrine). Here, however, Perelman has not made

15

any allegations in his complaint that would support application of the fraudulent concealment doctrine or of the discovery rule.

We thus conclude that, at the latest, the statute of limitations began to run in 2007, when Perelman became concerned about the transaction. As a result, the longest applicable limitations period, the four-year period that governs breach of contract actions, expired in 2011, before Perelman filed the instant complaint in September 2012. The District Court correctly concluded that Perelman's claims are time-barred.[8]

## V.

For the foregoing reasons, we will affirm the order of the District Court that granted the counterclaim defendants' motion to dismiss in case number 13-2521, and the order of the District Court that granted Adams's motion to dismiss in case number 13-2658.

---

[8] Because we conclude that Perelman's causes of action against Adams were time-barred, we do not address the parties' arguments about the potential application of the doctrine of res judicata in this case.

16